LOCKE LORD BISSELL & LIDDELL LLP
John M. Hochhausler (SBN: 143801)
jhochhausler@lockelord.com
Matthew B. McClendon (SBN: 256031)
mmcclendon@lockelord.com
300 South Grand Avenue, Suite 2600
Los Angeles, California 90071-3119
Telephone: (213) 485-1500
Facsimile: (213) 485-1200

Attorneys for Defendants
EXECUTIVE TRUSTEE SERVICES, LLC (incorrectly sued herein as "ETS Services, LLC") and GMAC MORTGAGE, LLC (incorrectly sued herein as "GMAC Mortgage")

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR L. FIGUEROA,<br><br>Plaintiff,<br><br>vs.<br><br>ETS SERVICES, LLC, GMAC MORTGAGE, and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO. CV 08-07400 GAF (MANx)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Honorable Gary A. Feess<br><br>Date: February 2, 2009<br>Time: 9:30 a.m.<br>Place: Courtroom 740 |

Defendants Executive Trustee Services, LLC ("Executive Trustee") (incorrectly sued herein as "ETS Services, LLC") and GMAC Mortgage, LLC (incorrectly sued herein as "GMAC Mortgage") (collectively with Executive Trustee, "Defendants") filed a Motion to Dismiss all causes of action contained in Plaintiff's Complaint on November 14, 2008. Defendants hereby submit this Reply in support of their Motion to Dismiss pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

1

Defendants' Reply in Support of Motion to Dismiss
*Figueroa v. ETS Services, LLC, et al.*, Case No. CV 08-07400 GAF (MANx)

1   The hearing on Defendants' Motion to Dismiss is scheduled for Monday,
2   February 2, 2009, at 9:30 a.m. Plaintiff's Opposition to Defendants' Motion to
3   Dismiss was due on or before January 19, 2009. As of the date of this Reply, Plaintiff
4   has failed to file an opposition to Defendants' Motion to Dismiss. Any opposition
5   filed now would obviously prejudice Defendants. Central District of California Local
6   Rule 7-12 provides:

**Failure to File Required Papers**

> The Court may decline to consider any memorandum or other paper not filed within the deadline set by order or local rule. The failure to file any required paper, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion.

Accordingly, Plaintiff's failure to oppose Defendants' Motion to Dismiss should be deemed to demonstrate Plaintiff's consent to the dismissal of the Complaint with prejudice, as requested by Defendants. *See Cortez v. Hubbard*, No. 07-4556, 2008 WL 2156733, at *1 (C.D. Cal. May 18, 2008); *Ferrin v. Bias*, No. 02-535, 2003 WL 25588274, at *1 (C.D. Cal. Jan. 2, 2003).

Central District of California courts have recently granted a number of motions to dismiss nearly identical complaints filed by Plaintiff's counsel. *See, e.g., Putkkuri v. Recontrust Co.*, No. 08-cv-1919 WQH (AJB), 2009 U.S. Dist. LEXIS 32 (S.D. Cal. Jan. 5, 2009); *Chavez v. Recontrust Co.*, No. CV F 08-1864 LJO DLB, 2008 U.S. Dist. LEXIS 104060 (E.D. Cal. Dec. 11, 2008); *Pineda v. Saxon Mortgage Servs., Inc.*, No. CV 08-1187 JVS (ANx), 2008 WL 5187813 (C.D. Cal. Dec. 10, 2008); *Izenberg v. ETS Servs., LLC*, No. CV 08-06888 MMM (SSx), 2008 WL 5179088 (C.D. Cal. Dec. 8, 2008). At least two Central District of California courts have dismissed nearly identical complaints with prejudice. *See Canchola v. ETS Servs., LLC*, No. CV 08-07070 VBF (AGRx) (C.D. Cal. Dec. 29, 2008); *Ramero v. Saxon Mortgage Servs.*, No. CV 08-06982 R (RCx) (C.D. Cal. Dec. 2, 2008). A number of California district courts have found that plaintiffs in these cases and Plaintiff's counsel appear to be improperly using the judicial process to delay lawful nonjudicial

foreclosures. *See, e.g., Candelo v. NDEX West, LLC*, No. CV F 08-1916 LJO DLB, 2008 U.S. Dist. LEXIS 105926, *20 (E.D. Cal. Dec. 23, 2008) (noting the "Court's concerns about delay tactics"); *Vargas v. Recontrust Co.*, No. CV F 08-1683, 2008 U.S. Dist. LEXIS 100115, *9 (E.D. Cal. Dec. 1, 2008) (surmising that the complaint was filed in an attempt to delay nonjudicial foreclosure). In fact, during a hearing on January 13, 2009, Judge Manuel Real declared nine nearly identical cases filed by Plaintiff's counsel and premised on the same legal theory as the instant Complaint to be "frivolous."[1]

For all of these reasons, this Court should act to prevent Plaintiff from achieving his goal of continuing to delay a lawful nonjudicial foreclosure and grant Defendants' Motion to Dismiss with prejudice because the legal theory underlying Plaintiff's Complaint is unsupported by law and because Plaintiff fails to plead sufficient facts to state a claim pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

Dated: January 22, 2009

Respectfully submitted,

LOCKE LORD BISSELL & LIDDELL LLP

By: /s/ John M. Hochhausler
    John M. Hochhausler
    Matthew B. McClendon

Attorneys for Defendants
EXECUTIVE TRUSTEE SERVICES, LLC
and GMAC MORTGAGE, LLC

---

[1] Judge Real also found sufficient evidence of *criminal* conduct in connection with the filing of these cases to make referrals to the U.S. Attorney for the Central District of California and the District Attorney for the counties of Los Angeles, San Bernardino, and Orange. Moreover, Judge Real found sufficient evidence of unethical conduct by Plaintiff's counsel and his firm to warrant referral to the State Bars of California and Nevada. A transcript of Judge Real's January 13, 2009 hearing, as well as the Order issued by Judge Real after the hearing, are attached to this Reply as <u>Exhibit 1</u>.

## CERTIFICATE OF SERVICE

I, John M. Hochhausler, an attorney, do hereby certify that on January 22, 2009, I caused a copy of the foregoing DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS to be served by the method so indicated below upon the following parties:

*Homan Mobasser*
*Scott M. Gitlen*
*Mitchell W. Roth*
*or Attorney currently responsible for the matter referenced herein*
M.W. Roth, PLC
13245 Riverside Drive, Suite 320
Sherman Oaks, California 91423

*Via U.S. Mail, postage prepaid.*

Dated: January 22, 2009                By:   /s/ John M. Hochhausler
                                              John M. Hochhausler

CHI1 1562168v.1

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

# **EXHIBIT 1**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| LOURDES MEZA, | ) | |
| Plaintiff, | ) ) ) | No. CV 08-7275 |
| vs. | ) ) | |
| AZTEC FORECLOSURE CORP., et al., | ) ) | |
| Defendants. | ) | |
| SUSANA TORRES, | ) ) | |
| Plaintiff, | ) ) ) | No. CV 08-7539 |
| vs. | ) ) | |
| EMC MORTGAGE CORP., et al., | ) ) | |
| Defendants. | ) | |
| JOSE A. ROMERO, | ) ) | |
| Plaintiff, | ) ) ) | No. CV 08-6982 |
| vs. | ) ) | |
| SAXON MORTGAGE SERVICES, et al., | ) ) | |
| Defendants. | ) | |

TRANSCRIPT OF PROCEEDINGS

THE HONORABLE MANUEL L. REAL, U.S. DISTRICT JUDGE PRESIDING

LOS ANGELES, CALIFORNIA

JANUARY 13, 2009

**HEARING**

BRIDGET R. MONTERO, CSR 10020, CRR
United States Courthouse
312 North Spring Street, Room 435
Los Angeles, California 90012
Internal File No. 09007

**Exhibit 1, Page 5**

```
 1   APPEARANCES OF COUNSEL:

 2

 3   For the Plaintiffs:

 4

 5   M.W. Roth, PLC
     BY:  MITCHELL ROTH
 6   BY:  LAWRENCE STRAUSS
     13245 Riverside Drive, Suite 320
 7   Sherman Oaks, CA 91423

 8

 9   For the Defendants:

10

11   Houser & Allison, PC
     BY:  ERIC D. HOUSER
12   BY:  ROBERT W. NORMAN
     9970 Research Drive
13   Irvine, CA 92618

14

15   Adorno Yoss Alvarado & Smith
     BY:  JOHN M. SORICH
16   1 MacArthur Place, Suite 200
     Santa Ana, CA 92707

17

18   Locke Lord Bissell & Liddell, LLP
     BY:  JOHN M. HOCHHAUSLER
19   BY:  MATT McCLENDON
     300 South Grand Avenue, Suite 2600
20   Los Angeles, CA 90071

21

22

23                         - - - - -

24

25
```

```
 1                TUESDAY, JANUARY 13, 2009; 1:40 P.M.
 2                            - - - - -
 3
 4           THE CLERK:  Item No. 2, CV 08-7275, Lourdes Meza
 5   v. Aztec Foreclosure Corporation; CV 08-7539, Susana Torres
 6   v. EMC Corporation; and CV 08-6982, Jose A. Romero v. Saxon
 7   Mortgage Services.
 8           Counsel, your appearances, please.
 9           MR. ROTH:  Good afternoon, Your Honor.  It's
10   Mitchell Roth, representing the plaintiffs in all of those
11   cases.
12           MR. STRAUSS:  Lawrence Strauss with M.W. Roth,
13   PLC, also representing the plaintiffs.
14           MR. HOUSER:  Good afternoon, Your Honor.  Eric
15   Houser of Houser & Allison, a P.C., on behalf of Defendant
16   HSBC Bank, as trustee, in the Meza matter.
17           MR. NORMAN:  Good afternoon, Your Honor.  Robert
18   Norman of Houser & Allison, a P.C., for defendant HSBC Bank,
19   as trustee, in the Meza matter.
20           MR. SORICH:  Good afternoon, Your Honor.  John
21   Sorich, from the Adorno Yoss firm, on behalf of EMC Mortgage
22   in the Torres case.
23           MR. HOCHHAUSLER:  Good afternoon, Your Honor.
24   John Hochhausler and Matthew McClendon Of Locke Lord Bissell
25   & Liddell, on behalf of the defendants in the Romero matter.
```

```
 1          THE COURT: All right. Mr. Strauss, have you got
 2  the information of what each of the plaintiffs paid for the
 3  filings in these nine cases?
 4          MR. STRAUSS: Mr. Roth has that information, Your
 5  Honor.
 6          THE COURT: All right. Mr. Roth, you are under --
 7  why don't you take the stand because you are under oath, and
 8  you're still under oath.
 9          MR. ROTH: Sure, Your Honor.
10          THE CLERK: Please state your name for the record.
11          THE WITNESS: Mitchell Roth. That's R-O-T-H.
12
13                        MITCHELL ROTH
14  called as a witness, having been previously duly sworn, is
15  examined and testifies as follows:
16
17                         EXAMINATION
18
19          THE COURT: How much was paid in the Romero case?
20          THE WITNESS: The plaintiffs, Your Honor, paid
21  nothing in filing fees in the Romero case. The --
22          THE COURT: How was it filed?
23          THE WITNESS: We paid --
24          THE COURT: Who paid the filing fees?
25          THE WITNESS: The filing fees were paid by United
```

**Exhibit 1, Page 8**

```
 1   First, Your Honor.
 2            THE COURT:  And how much did Romero pay United to
 3   file the lawsuit and hire you as counsel?
 4            THE WITNESS:  Romero didn't pay -- Romero didn't
 5   pay anything to United to file the lawsuit.  As I explained
 6   when we were here last, Your Honor, there is a joint venture
 7   agreement between United First and Romero.
 8            THE COURT:  How much did Mr. Romero have to invest
 9   in the joint venture to file this lawsuit?
10            THE WITNESS:  I believe -- the joint venture
11   payment from United -- to United First, I don't have access
12   to the exact number.  It would be $1250, in all likelihood.
13            THE COURT:  All right.  How about Ms. Meza?
14            THE WITNESS:  The same, Your Honor.
15            THE COURT:  And Mr. Tadena (ph)?
16            THE WITNESS:  The same, Your Honor.
17            THE COURT:  And Mr. Figueroa?
18            THE WITNESS:  I'm sorry.  Is that a different
19   case?
20            THE COURT:  Susana Torres -- William Vasquez v.
21   Index West.
22            THE WITNESS:  We're here under three cases, Your
23   Honor.  Is that correct?
24            THE COURT:  No.  I want all nine.
25            THE WITNESS:  I -- well, my best information is,
```

```
 1  is that the minimum joint venture contribution from the
 2  homeowner to United First in one of their joint venture
 3  agreements is $1250 a month, and they --
 4           THE COURT:  A month?
 5           THE WITNESS:  Yes, a month.
 6           THE COURT:  One month?
 7           THE WITNESS:  Yes.
 8           And they --
 9           THE COURT:  So how much has Mr. Romero paid to
10  United, Saxon Mortgage, during the pendency of these
11  lawsuits?
12           THE WITNESS:  Well, I don't -- it would -- one
13  would -- assuming that the payments have continued to be
14  made, which I don't have any knowledge that in fact that is
15  true or not, it would be from the date of the lawsuit
16  forward, $1250 a month, Your Honor.
17           But, for instance, just to clarify my last
18  statement, Your Honor, I know with respect to the Meza case,
19  the -- the bulk of the charges on the Meza case were for
20  defense of an unlawful detainer action, and that case is
21  currently on appeal, and there is $1500 a month being paid
22  into court for the stay pending appeal, and, as a
23  consequence, the Mezas are no longer making any joint
24  venture contribution because United First has waived that
25  during the pendency of the appeal.
```

```
 1              THE COURT:  Was Ms. Meza contacted to file the
 2   lawsuit?
 3              THE WITNESS:  No.  I'm sorry.  Maybe I shouldn't
 4   answer the question -- contacted by whom, Your Honor?
 5              THE COURT:  By your office.
 6              THE WITNESS:  Yes.
 7              THE COURT:  And what arrangements were made for
 8   hiring you to represent her?
 9              THE WITNESS:  The way the joint venture works,
10   Your Honor, is --
11              THE COURT:  Not the joint venture.  How much was
12   she going to have to pay you to represent her?
13              THE WITNESS:  Nothing.
14              THE COURT:  She was paying whom for you to
15   represent her?
16              THE WITNESS:  She was paying United First a joint
17   venture contribution.  The business of the joint venture
18   hired us to represent her, and we send the bills to the
19   joint venture.
20              THE COURT:  And they collected the bill?
21              THE WITNESS:  No, they don't collect the bill.
22   They pay the bill, Your Honor.  The joint venture pays the
23   bill to us.
24              THE COURT:  They have already been paid by the
25   1250?
```

```
 1            THE WITNESS:  I have no idea how they handle their
 2   internal accounting.  But, for instance, Your Honor --
 3            THE COURT:  How much did you charge United for
 4   filing of each of these lawsuits?
 5            THE WITNESS:  Well, I -- I don't charge them a
 6   flat amount for the filing of the lawsuit.  I charge for
 7   paralegal time and for attorney time and I think I --
 8            THE COURT:  How much have you charged on the
 9   Romero case to United for the filing of that lawsuit?
10            THE WITNESS:  Your Honor, you have those papers, I
11   brought to court last time, and you wanted to keep them, so
12   I don't have any reference to answer that question from.
13            I do have the information on the Meza case.  I
14   don't have it on any of the other cases because you have
15   those documents.
16            THE COURT:  The Meza case, how much were you paid
17   by United to file that lawsuit and maintain the lawsuit?
18            THE WITNESS:  Now, but "that lawsuit," do you mean
19   this action that we're here appearing on?
20            THE COURT:  Lourdes Meza v. Aztec Foreclosure
21   Corporation.
22            THE WITNESS:  Right.
23            The answer to that is, $3,921 was billed -- we
24   haven't been paid at all yet, but was billed to United First
25   for that -- what was -- started out as a state court action
```

```
 1   and was removed here to federal court for the Meza v. Aztec
 2   Foreclosure case.
 3           THE COURT:  Mr. Roth, I don't think you
 4   understand, I don't think you understand when I tell you
 5   that I want information about how much these people are
 6   paying for -- for lawsuits which are frivolous, in that the
 7   law -- the lawyer who files the case doesn't appear for a
 8   motion to dismiss and the motion -- and the dismissal gets
 9   filed with prejudice, and lawyers from the other side have
10   to come to make that motion to dismiss to get rid of this
11   frivolous lawsuit.
12           THE WITNESS:  Is that a question, Your Honor?
13           THE COURT:  I want -- I want all of that
14   information from you, and you're to get it from your client,
15   United, because they are the ones who are hiring you -- or,
16   evidently, hiring you as the lawyer for these plaintiffs.
17           And either you're going to give back the money to
18   these people or they are going to give back the money to
19   these people.  But you are primarily responsible because you
20   have filed the action in California, and it has been removed
21   to this court, and you have appeared in this court in those
22   actions.
23           Now, do you understand what information I want?
24           THE WITNESS:  If I can clarify to be sure, Your
25   Honor, I think you're asking for information as to how much
```

```
 1   the particular plaintiffs have paid to United First on the
 2   joint venture agreements.  Is that correct?
 3           THE COURT:  If you want to put it that way, you
 4   know -- the euphemism is, yeah, they paid United on the
 5   euphemistic joint venture to file these lawsuits in these
 6   courts in California.
 7           THE WITNESS:  Respectfully, Your Honor, I
 8   understand that the Bench has its point of view.  I don't
 9   agree with the point of view.
10           THE COURT:  Well, I have experienced nine cases in
11   this courtroom.  In this courtroom I have -- all right?  And
12   in the meantime, so that you have it very clearly -- and you
13   can get whatever counsel you need to represent you and the
14   United entity, I am referring these matters to the State Bar
15   of the State of California, to the State Bar of the State of
16   Nevada, to the United States Attorney in the district -- in
17   the Central District of California, and to the district
18   attorney of Los Angeles and San Bernardino and Orange
19   counties, so that they can make an investigation of this
20   matter and do what is required under the law of the State of
21   California for this case.
22           In the meantime, this matter is put over to --
23   Bill, a free day next week?
24           THE CLERK:  Any day.
25           THE COURT:  -- to the 21st -- to the 22nd of
```

```
 1  January.  That gives you time to get this information.  And
 2  that will be at ten o'clock a.m.
 3              THE WITNESS:  Your Honor, may I inquire?  As to
 4  the documents that I brought last week, I have the
 5  information on those documents.  I noted the information
 6  about how much was paid in attorneys' fees on those matters.
 7              The only -- and I can look at those documents.
 8  I'll be happy to tell you with respect to those three cases.
 9              THE COURT:  No.  All these nine cases.
10              THE WITNESS:  Well, I understand that, Your Honor,
11  but I would like to get my documents back so I don't have to
12  do the work over again.
13              THE COURT:  And I'd ask counsel to also file with
14  me the attorneys' fees that you have expended by their
15  client on these cases.
16              So January 22nd at 10:00 a.m., and the court --
17  the clerk will give you a copy of what you've already
18  presented to this.
19              THE WITNESS:  Thank you, Your Honor.
20              MR. HOCHHAUSLER:  Your Honor, one more
21  clarification on behalf of the defendants, do you just want
22  our fees for the case in front of this Court --
23              THE COURT:  Yes.
24              MR. HOCHHAUSLER:  -- or in all courts throughout
25  the state?
```

```
 1        THE COURT:  In this court, yes.
 2        MR. HOCHHAUSLER:  Thank you, Your Honor.
 3        THE COURT:  All right.
 4        (Proceedings concluded at 1:50 p.m.)
 5
 6
 7
 8
 9               C E R T I F I C A T E
10
11        I hereby certify that the foregoing is a true and
12   correct transcript from the stenographic record of the
13   proceedings in the foregoing matter.
14
15   _____        Date:  January 14, 2009
     Bridget R. Montero
16   Official Court Reporter
     CSR No. 10020
17
18
19
20
21
22
23
24
25
```

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES - GENERAL

**CASE NO.: CV-08-7275-R**
            **CV-08-7539-R**
            **CV-08-6982-R**

Date: **JAN. 13, 2009**

**TITLE: LOURDES MEZA V. AZTEC FORECLOSURE CORP et al**
       **SUSANA TORRES -V- EMC MORTGAGE CORP et al**
       **JOSE A. ROMERO -V- SAXON MORTGAGE SERVICES et al**

==========================================================================

**PRESENT:**

<u>HON. MANUEL L. REAL, JUDGE</u>

<u>William Horrell</u>                             <u>Bridget Montero</u>
**Deputy Clerk**                                **Court Reporter**

ATTORNEYS PRESENT FOR PLAINTIFFS:       ATTORNEYS PRESENT FOR DEFENDANTS:

Mitchell Roth                           Eric House
Lawrence Strauss                        Robert Norman
                                        John Sorich
                                        John Hochhausler
                                        Matt McLendon

**PROCEEDINGS:** Further Hearing on Order to Show Cause why Plaintiffs' Counsel should not be sanctioned

Mitchell Roth resumes stand, and is questioned by the Court.
The Court Orders Mr. Roth to bring to Court all billing statements of how much each plaintiff has paid either to him or his firm, or to Ufirst, or to anyone else, in the lawsuits brought on their behalf in the 3 listed cases above, as well as in CV-08-7345-R; CV-08-7400-R; CV-08-7629-R; CV-08-7977-R; CV-08-7985-R; CV-08-8033-R; and CV-08-8261-R, and continues this matter to January 22, 2009 at 10:00 a.m.  Counsel for defendants in the 3 cases in the caption above are to file declarations regarding their attorney's fees to date accrued in defending those actions.

The Court refers these matters for investigation to the State Bars of California and of Nevada; to the U. S. Attorney of the Central District of California; and to the District Attorneys Offices of Los Angeles County, of Riverside County, and of Orange County.

                                                                 10 min

**MINUTES FORM 90**                             Initials of Deputy Clerk __WH__
**CIVIL -- GEN**

Exhibit 1, Page 17